62 P.3d 1101

**Dominique M. LESLIE, a single woman, and Dominique M. Leslie, surviving spouse and personal representative of the Estate of Robert A. Leslie, Plaintiff–Appellant,**

v.

**J.C. PENNEY LIFE INSURANCE COMPANY, a Vermont corporation, Defendant–Respondent.**

No. 26297.

Supreme Court of Idaho,
Coeur d'Alene, 2002 Term of Court.

Jan. 21, 2003.

Kenneth B. Howard, Jr., Coeur d'Alene, for appellant.

Huppin, Ewing, Anderson & Paul, P.S., Coeur d'Alene, for respondent. Irving "Buddy" Paul argued.

SCHROEDER, Justice.

Dominique Leslie made claims for coverage as the beneficiary of two accidental death insurance policies issued by J.C. Penney Life Insurance Company (J.C. Penney) to her husband, Robert Leslie. Mrs. Leslie appeals the judgment entered upon a jury verdict in favor of J.C. Penney and a partial summary

judgment granted in favor of J.C. Penney on her bad faith claim. At issue are the jury instructions and the grant of partial summary judgment.

## I.

## FACTUAL BACKGROUND

On March 12, 1997, J.C. Penney issued an accidental death insurance policy to Robert A. Leslie, providing a death benefit of $50,000. J.C. Penney issued a second accidental death insurance policy on April 28, 1997, which provided a death benefit of $25,000. Mrs. Leslie is the beneficiary of both policies. The policies cover injuries caused by an "accident" that has occurred while the insurance policy is in force and occurred "directly and independently of all other causes." Both policies state that "[n]o benefit shall be paid for Injury that ... is due to disease, bodily or mental infirmity, or medical or surgical treatment of these."

A variety of events relating to Mr. Leslie's physical health preceded the issuance of the policies. In 1996 he was involved in two snowmobile accidents and a motorcycle accident. The last snowmobile accident occurred in October or November, but he sought no medical attention following the accident.

On May 10, 1997, Mr. Leslie was admitted to Kootenai Medical Center with complaints of abdominal pain, nausea, and vomiting. He was diagnosed with potential bowel entrapment in a ventral hernia related to a snowmobile accident, and the doctors determined that exploratory surgery was necessary that day. There was no ventral hernia or bowel blockage, but the surgeon removed the appendix because it appeared "somewhat thickened." A pathological report later diagnosed the appendix tissue as "acute appendicitis." On May 12, two days after the surgery, Mr. Leslie began aspirating stomach contents, due at least in part to the doctors' removal of a nasogastric tube. The tube had been placed in Mr. Leslie prior to surgery and removed as part of post-operative care. Mr. Leslie passed away on June 1, 1997.

Mrs. Leslie submitted two proofs of accidental death to J.C. Penney which denied the first because the alleged snowmobile accident that led to death occurred prior to the effective date of the policies. The second proof named another "accident," the aspiration following surgery, as the cause of death. J.C. Penney denied this claim, as well, adding as an additional ground for denying coverage that the injury leading to death was excluded as a disease or bodily infirmity or related surgical procedure.

## II.

## PROCEDURAL BACKGROUND

Mrs. Leslie filed suit on December 18, 1997. J.C. Penney filed a motion for summary judgment, which the district court denied. J.C. Penney filed a second motion for summary judgment restricted solely to the claims of bad faith. The district court granted that motion based upon a finding that the claim was fairly debatable. A trial was held on all remaining issues. The jury answered special interrogatories, finding that Mr. Leslie's death was the result of an accident, but that the injury leading to death was also from a disease or bodily infirmity or related surgical procedure. Consequently, coverage was excluded under the policy. Mrs. Leslie appealed.

## III.

## THE DISTRICT COURT DID NOT ERR IN ITS INSTRUCTIONS TO THE JURY ON THE TERM "BODILY INFIRMITY"

The district court gave the following instruction:

### INSTRUCTION NO. 7

In this case there are two issues that the jury will have to consider.

*FIRST*

Dominique Leslie has the burden of proving that the cause of Robert A. Leslie's death resulted directly and independently of all other causes from bodily injuries caused by an accident.

The phrase "directly and independently of all other causes" means that the acci-

dent was the dominant cause of death but not necessarily the only cause.

The term "accident" is defined as:

1) an intentional act which results in unexpected consequences; or

2) an unexpected event which may be caused by negligence; or

3) an unexpected event which is the result of unintentional conduct.

*SECOND*

J.C. Penney Life Ins. Co. has the burden of proving that the cause of Robert A. Leslie's death was due to disease or bodily infirmity or was due to medical or surgical treatment of disease or bodily infirmity.

The terms "disease" and "bodily infirmity" as used in this case are construed to be practically the same and refer only to some active ailment or disorder of a somewhat established or settled character from which a person is suffering. It must be an abnormal condition of such currently active quality or degree that in its natural and probable development it may be expected to be a source of some physical disturbance. In contrast, a condition which is found to be abnormal only when tested by a standard of perfection and with only a remote potential to be a source of physical disturbance is not a "disease" or "bodily infirmity."

## A. Standard of Review

"The standard of review for issues concerning jury instructions is limited to a determination whether the instructions, as a whole, fairly and adequately present the issues and state the law. When the instructions, taken as a whole, do not mislead or prejudice a party, an erroneous instruction does not constitute reversible error." *Silver Creek Computers, Inc. v. Petra, Inc.,* 136 Idaho 879, 882, 42 P.3d 672, 675 (2002) (citations omitted).

## B. The jury instruction regarding the term "bodily infirmity" fairly and adequately states the law.

In *Silverstein v. Metropolitan Life Ins. Co.,* 254 N.Y. 81, 171 N.E. 914 (1930), which both parties cite and rely upon, Judge Cardozo defined and discussed at length the term "bodily infirmity" as it is used in an accidental death insurance policy:

We think the evidence sustains a finding that the ulcer was not a disease or an infirmity within the meaning of the policy. Left to itself, it would have been as harmless as a pimple or a tiny scratch. Only in the event that it was progressive would it become a source of pain or trouble. If dormant, as it was found to be, it was not only harmless in itself, but incapable of becoming harmful except through catastrophic causes, not commonly to be expected. In a strict or literal sense, any departure from an ideal or perfect norm of health is a disease or an infirmity. Something more, however, must be shown to exclude the effects of accident from the coverage of a policy. The disease or the infirmity must be so considerable or significant that it would be characterized as disease or infirmity in the common speech of men. "Our guide is the reasonable expectation and purpose of the ordinary business man when making an ordinary business contract." A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules.

A distinction, then, is to be drawn between a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief, in which event it may fairly be described as a disease or an infirmity, and a condition abnormal or unsound when tested by a standard of perfection, yet so remote in its potential mischief that common speech would call it not disease or infirmity, but at most a predisposing tendency.... The governing principle has been stated by Rugg, C. J., with clearness and precision: "If there is no active disease, but merely a frail general condition, so that powers of resistance are easily overcome, or merely a tendency to disease which is started up and made operative, whereby death results, then there may be recovery even though the

accident would not have caused that effect upon a healthy person in a normal state." 171 N.E. at 914–15 (citations omitted).

■ Mrs. Leslie argues that the trial court erred by not distinguishing in the instruction between a "bodily infirmity" and a "temporary disorder," citing *French v. Fidelity & Casualty Co.* in support: "Bodily.infirmity as used in an accident policy exempting the insurer from liability only includes an ailment or disorder of a somewhat established or settled character, and not merely a temporary disorder arising from a sudden and unexpected derangement of the system." 135 Wis. 259, 115 N.W. 869, 875 (1908). It is clear from the analysis in *French*, however, that by "temporary" the court meant a condition that, if left to itself, would not cause any problems; it was not referring to serious conditions that "have a direct tendency to shorten life" if left alone, but that are temporary only in that they are quickly treatable by surgery or other therapy. 115 N.W. at 875.

Mrs. Leslie also relies upon *Couch on Insurance,* which defines "bodily infirmity" as:

[A]n infirmity of a substantial character, which, in some material degree, impairs physical condition and health, and increases the risk to such an extent as would have been likely to affect the action of the insurer, if known.

The term does not relate to temporary, trivial, or minor disorders or ailments, or defective conditions of insignificant extent and of no practical effect, but to those of a somewhat settled, established character, which at least have a tendency to impair one's health and physical vigor, or to render one more susceptible to accident.

Lee R. Russ, Couch on Insurance § 87:72, at 87–123 to 87–124 (3d ed.1997). By "temporary," this definition suggests those ailments that are of no practical effect if left alone. Temporary ailments are contrasted with actual "bodily infirmities" which "at least have a tendency to impair one's health." These sources, therefore, do not support an instruction that would say that all temporary ailments (e.g., ailments that last a short period or are treated quickly), regardless of their

severity if allowed to develop, are not "bodily infirmities."

Jury instruction No. 7 read as follows:

The terms "disease" and "bodily infirmity" as used in this case are construed to be practically the same and refer only to some active ailment or disorder of a somewhat established or settled character from which a person is suffering. It must be an abnormal condition of such currently active quality or degree that in its natural and probable development it may be expected to be a source of some physical disturbance. In contrast, a condition which is found to be abnormal only when tested by a standard of perfection and with only a remote potential to be a source of physical disturbance is not a "disease" or "bodily infirmity."

The instruction fairly and accurately reflects the law.

## IV.

## REMAINING ISSUES

Mrs. Leslie has made other challenges which are rendered moot as a consequence of the court's decision. She asserts that the instruction defining "accident" was erroneous. The jury found in Mrs. Leslie's favor that there was an accident. The challenge to the instruction would only be relevant if the case were remanded for trial.

■ Mrs. Leslie challenges the grant of summary judgment against her on the claim of bad faith. The jury determined that there was no coverage under the policy. Consequently, the claim of bad faith is moot.

## V.

## CONCLUSION

The decision of the district court is affirmed. The respondent is awarded costs. No attorney fees are allowed.

Justices WALTERS, KIDWELL, EISMANN and Justice Pro Tem SCHILLING concur.