WELLS, J.
The Attorney General of Florida has requested this Court’s opinion as to the validity of an initiative petition sponsored by Floridians for Smarter Growth, Inc., and the accompanying Financial Impact Statement submitted by the Financial Impact Estimating Conference. We have jurisdiction. See art. IV, § 10, art. V, § 3(b)(10), Fla. Const. For the reasons explained below, we conclude that the proposed amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution, that the ballot title and summary comply with section 101.161(1), Florida Statutes (2008), and that the financial impact statement complies with section 100.371, Florida Statutes (2008).
I. FACTS
The Smarter Growth initiative petition seeks to amend article II, section 7, of the Florida Constitution. The ballot title and summary read as follows:
Florida Growth Management Initiative Giving Citizens the Right to Decide Local Growth Management Plan Changes Allows Floridians to call for voter approval of changes to local growth management plans through a citizen petition. Voter approval of growth management plan changes will be required if 10% of the voters in the city or county sign a petition calling for such a referendum. Defines terms and establishes petition requirements.
The full text of the proposed amendment states:
a) Statement and Purpose:
The Legislature has enacted growth management and land use planning legislation; these laws do not provide for voters’ direct approval of the resulting plans or amendments. The purpose of this amendment is to provide a limited opportunity for voters to approve or disapprove these plans or amendments. Because thousands of growth management plans and amendments are adopted statewide each year, this amendment would limit such referenda to situations where a sufficient number of persons file a petition seeking such a referendum during a set period of time. The criteria for signing and filing a peti *119 tion are intended to demonstrate that there is substantial interest in a referendum, and are based, in part, on existing Section 550.175, Fla. Stat. This amendment is intended to modify existing law, permit flexibility in future growth management-related legislation (except rules which would affect voters’ ability to petition for referenda), and pre-empt or supersede recent proposals to subject all comprehensive land use plans and amendments to votes, thus balancing competing interests without over-burdening voters.
b) Amendment of Florida Constitution:
Art. II, Section 7, Fla. Const., is amended by inserting the following new subsection at the end thereof, to read:
Florida Growth Management Initiative Petitions.
a) In addition to any power or ability of voters to participate in growth management planning processes provided by this Section or by general law, the registered voters of a local government may offer a Florida Growth Management Initiative Petition regarding any growth management plan or amendment to such a plan.
b) If a valid and sufficient Florida Growth Management Initiative Petition is filed and verified by the appropriate election authorities for a local government, the local government shall conduct a referendum approving or disapproving the specific growth management plan or amendment. The referendum shall be conducted as provided by applicable general law of the State or the local government. If a plan or amendment is disapproved in such a referendum, it is not effective and may not be adopted or implemented by the local government or relied on by others. The fact that a plan or amendment has been the subject of a referendum under this Section does not preclude future changes to that plan or amendment, or exempt such changes from these or other procedures and requirements. If a valid and sufficient Florida Growth Management Initiative Petition is not filed for a particular plan or amendment, notwithstanding any other provision of this Section or of general law, no referendum on that particular plan or amendment shall be held pursuant to this Section.
c) Definitions: For purposes of this section, the following terms shall have the following meanings:
1) “Local government” means a county or municipality.
2) “Growth management plan” means a plan to guide and control future land development in an area under the jurisdiction of a local government, including a comprehensive land use plan or similar document, and includes amendments to such plans, however described.
3) “Florida Growth Management Initiative Petition” means a written petition, on a form designated for that purpose, containing and describing all elements of the applicable growth management plan or amendment, and otherwise conforming in all respects to any requirements imposed by general law. Not more than one applicable growth management plan or amendment may be included in any one petition.
4) “Offer a Florida Growth Management Initiative Petition” means, in addition to any other requirement imposed by general law, that one or more individuals registered to vote for elections of a local government may *120 complete a Florida Growth Management Initiative Petition form and deposit the form with the County Supervisor of Elections or City Clerk (or similar election authority for the local government). The individuals completing the form must provide identification information, including name, address, telephone numbers, any Internet address or website owned, operated or used by the individuals which contains or will contain information on the particular plan or amendment which is the subject of the Petition, and any information indicating whether they have a financial interest in the particular plan or amendment which is the subject of the Petition (including interests involving personal, commercial or other land uses affected by the plan or amendment), and if so, describing the financial interest. The identification information shall be made available to the public, along with notice of the availability of the Petition; posting of this information on the Internet, in a manner reasonably calculated by the election authority to inform the public, shall be considered sufficient public availability of this information. Individuals who are registered voters of the local government and who are in favor of holding a referendum on the particular growth management plan or amendment shall be permitted to sign the Florida Growth Management Initiative Petition; a signature shall be affixed in a manner which clearly indicates that the signer is in favor of holding the referendum. Every signature upon every Florida Growth Management Initiative Petition must be signed at the office of the appropriate County Supervisor of Elections or City Clerk (or similar election authority for the local government), and the signer must present at the time of such signing evidence showing the person’s qualification as a voter of the local government at the time of the signing of the petition. Once the appropriate County Supervisor of Elections or City Clerk (or similar election authority for the local government) determines that, prior to verification, the Florida Growth Management Initiative Petition contains the facially-valid original signatures of at least ten percent of persons registered to vote in elections of the local government, the election authority shall notify the persons who completed and deposited the petition form. The election authority shall inquire if the persons wish to offer the Florida Growth Management Initiative Petition for verification of the signatures; if the persons wish to offer the Florida Growth Management Initiative Petition, the election authority shall verify the signatures, with any costs paid by the offering persons, and consider the Petition offered and submitted.
5) “Valid and sufficient Florida Growth Management Initiative Petition” means a written petition containing the valid original signatures of at least 10 percent of persons registered to vote in elections of the local government, and which is offered and submitted to the appropriate County Supervisor of Elections or City Clerk (or similar election authority for the local government) within sixty days from the date of the first signature on the petition.
c) Effective Date and Severability:
This amendment shall be self-executing and effective on the date it is approved by the electorate. If any portion of this measure is held invalid for any reason, the remaining portion of this measure, *121 to the fullest extent possible, shall be severed from the void portion and given the fullest possible force and application.
Floridians for Smarter Growth, the sponsor of the amendment, filed briefs in support of the proposed amendment. Florida Hometown Democracy, Inc., which previously submitted a competing proposed amendment that would require local governments to hold referenda on new comprehensive land-use plans or amendments to existing comprehensive land-use plans, see Advisory Op. to Att’y Gen. re Referenda Required for Adoption & Amendment of Local Gov’t Comprehensive Land Use Plans, 938 So.2d 501 (Fla.2006), filed briefs in opposition to the proposed amendment.
II. REVIEW OF PROPOSED AMENDMENT
When the Court renders an advisory opinion concerning a proposed constitutional amendment arising through the citizen initiative process, the Court limits its inquiry to two issues: (1) whether the amendment itself violates the single-subject requirement of article XI, section 3, Florida Constitution; and (2) whether the ballot title and summary violate the clarity requirements of section 101.161(1), Florida Statutes (2008). The Court will not address the merits or wisdom of the proposed amendment and “must act with extreme care, caution, and restraint before it removes a constitutional amendment from the vote of the people.” Advisory Op. to Att’y Gen. re Fla. Minimum Wage Amendment, 880 So.2d 636, 639 (Fla.2004) (quoting Askew v. Firestone, 421 So.2d 151, 156 (Fla.1982)).
A. Single-Subject Requirement
Article XI, section 3, Florida Constitution, sets forth the single-subject requirement for a proposed constitutional amendment arising via the citizen initiative process. The single-subject rule is intended to prevent an amendment from engaging in either of two practices: (a) logrolling, or (b) substantially altering or performing the functions of multiple branches of state government. “A proposed amendment meets this test when it ‘may be logically viewed as having a natural relation and connection as component parts or aspects of a single dominant plan or scheme. Unity of object and plan is the universal test-Advisory Op. to Att’y Gen. re Fairness Initiative, 880 So.2d 630, 634 (Fla.2004) (Fairness Initiative) (quoting Fine v. Firestone, 448 So.2d 984, 990 (Fla.1984)).
The Smarter Growth amendment does not engage in logrolling. Like the proposed amendment discussed in Advisory Opinion to the Attorney General re Referenda Required for Adoption & Amendment of Local Government Comprehensive Land Use Plans, 902 So.2d 763, 766 (Fla.2005) {Land Use Plans 2005), this proposed amendment is limited to the single subject of providing for local referenda regarding the adoption and amendment of local growth management plans, albeit in more limited circumstances than contemplated by the Land Use Plans initiative. It does not combine any “unrelated provisions.” Id. Also like the proposed amendment reviewed in Land Use Plans 2005, the Smarter Growth amendment does not substantially alter or perform the functions of multiple branches of state government because all of its provisions pertain only to the local government legislative process of enacting and amending local growth management plans. The amendment does not involve other levels of government.
This Court has also considered whether a proposed amendment would substantially affect multiple constitutional provisions as part of its single-subject analysis. See, e.g., Advisory Op. to Att’y Gen. re Tax *122 Limitation, 644 So.2d 486, 490 (Fla.1994). “[T]he possibility that an amendment might interact with other parts of the Florida Constitution is not sufficient reason to invalidate the proposed amendment.” Advisory Op. to Att’y Gen. re Ltd. Casinos, 644 So.2d 71, 74 (Fla.1994) (citing Advisory Op. to Att’y Gen. English — The Official Language of Fla., 520 So.2d 11, 12-13 (Fla.1988)). The Smarter Growth amendment will substantially affect article II, section 7 of the Florida Constitution. However, contrary to Hometown Democracy’s arguments, the proposed amendment would only interact with, not substantially affect, other provisions of the Florida Constitution.
In sum, the proposed amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution.
B. Ballot Title and Summary
Section 101.161, Florida Statutes (2008), sets forth the requirements for the ballot title and summary of a proposed constitutional amendment:
[T]he substance of the amendment or other public measure shall be an explanatory statement, not exceeding 75 words in length, of the chief purpose of the measure-The ballot title shall consist of a caption, not exceeding 15 words in length, by which the measure is commonly referred to or spoken of.
§ 101.161(1), Fla. Stat. (2008). This Court has explained that
[I]n conducting its inquiry into the validity of a proposed amendment under section 101.161(1), the Court asks two questions. First, the Court asks whether “the ballot title and summary ... fairly inform the voter of the chief purpose of the amendment.” Right to Treatment and Rehabilitation for Nom-Violent Drug Offenses, 818 So.2d at 497. Second, the Court asks “whether the language of the title and summary, as written, misleads the public.” Advisory Op. to Att’y Gen. re Right of Citizens to Choose Health Care Providers, 705 So.2d 563, 566 (Fla.1998).
Fairness Initiative, 880 So.2d at 635-36. While the ballot title and summary must accurately inform voters of the content of the proposed amendment, this Court has held that “[i]t is not necessary to explain every ramification of a proposed amendment, only the chief purpose.” In re Advisory Op. to Att’y Gen. re Save Our Everglades, 636 So.2d 1336, 1341 (Fla.1994) (quoting Carroll v. Firestone, 497 So.2d 1204, 1206 (Fla.1986)).
The ballot title and summary in this case comply with the word-length limitations of section 101.161(1), Florida Statutes (2008). Thus, the issue for this Court is whether the ballot title and summary clearly and unambiguously state the chief purpose of the amendment without misleading voters.
The ballot title purports that the proposed amendment would give “Citizens the Right to Decide Local Growth Management Plan Changes.” When read in conjunction with the ballot summary, the “Right to Decide” language in the title does not misrepresent the chief purpose and legal impact of the amendment. The second sentence of the summary clarifies that to trigger a referendum on the adoption or amendment of a local growth management plan, ten percent of the voters in the potentially affected local government must sign a petition calling for a referendum. This sentence accurately conveys the purpose stated in the amendment text, which is “to provide a limited opportunity for voters to approve or disapprove” plans or amendments resulting from growth management and land use planning laws. See Advisory Op. to Att’y General re Fla. Transp. Initiative for Statewide High *123 Speed, Monorail, Fixed Guideway or Magnetic Levitation Sys., 769 So.2d 367, 371 (Fla.2000) (finding term “statewide” used in ballot title not misleading because summary accurately explained that proposed amendment would require system linking Florida’s five largest urban areas).
Furthermore, we reject Hometown Democracy’s argument that the ballot title and summary are misleading because they do not inform voters of the details of the petition process, such as the requirements that the voter initiating the petition publicly disclose certain personal information and that the petition can only be signed by registered voters at certain government offices within a sixty-day period. We find the instant ballot title and summary distinguishable from those found to omit material information in Advisory Opinion to the Attorney General re Amendment to Bar Government from Treating People Differently Based on Race in Public Education, 778 So.2d 888 (Fla.2000) (Treating People Differently); and Advisory Opinion to the Attorney General re Right of Citizens to Choose Health Care Providers, 705 So.2d 563 (Fla.1998) (Health Care Providers).
In Treating People Differently, the Court found that the ballot titles and summaries, which stated that the proposed amendments would bar the government from treating people differently based on race and end governmental discrimination, were misleading because they falsely implied that no constitutional provision addressing differential treatment existed at that time and that the government was then practicing discrimination. 778 So.2d at 898. The ballot titles and summaries failed to disclose that the proposed amendment would eliminate existing protections granted to victims of discrimination by the Florida Constitution. Id. at 894. In Health Care Providers, the Court found that the title and summary, which stated that the amendment would establish “the right of citizens to choose health care providers,” violated section 101.161 because in reality the amendment would likely make it more difficult for some to choose a health care provider by prohibiting insurers from contracting with insured individuals on the issue of health care providers. 705 So.2d at 565-66.
The current ballot title and summary do not mislead voters into thinking that the amendment would extend a right to decide while in actuality the amendment would effectively restrict opportunities for voters to decide local growth management plans. The proposed amendment states that it will operate “[i]n addition to any power or ability of voters to participate in growth management planning processes provided by this Section or by general law.” Thus, the proposed amendment, even with its petition requirements, will not have the effect of limiting rather than expanding existing opportunities for voters to become involved in the adoption and amendment of local growth management plans. We find the instant proposed amendment analogous to the amendment reviewed in Advisory Opinion to the Attorney General— Limited Political Terms in Certain Elective Offices, 592 So.2d 225, 228 (Fla.1991), where the Court held that the summary was not misleading because it was “not a situation in which the ballot summary concealed] a conflict with an existing provision.” Because the Smarter Growth amendment will not conflict with or restrict any existing rights to subject local growth management plans to local referen-da, the lack of detail concerning the petition process does not render the title and summary misleading.
In conclusion, we conclude that the ballot title and summary are not materially misleading due to omission. The ballot title and summary satisfy the require *124 ments of section 101.161, Florida Statutes (2008).[1]
C. Financial Impact Statement
The financial impact statement prepared by the Financial Impact Estimating Conference (FIEC) reads as follows:
The direct impact of this amendment on local government expenditures cannot be determined precisely. Local governments will incur significant costs to establish and administer the new Florida Growth Management Initiative petition process. Additional costs will be incurred for petition notification and signature collection, as well as ballot preparation and associated expenses for conducting any required referendum. The direct impact on state government expenditures will be insignificant. There will be no direct impact on government revenues.
This Court’s review of financial impact statements is narrow. The Court has “limited itself only to address whether the statement is clear, unambiguous, consists of no more than seventy-five words, and is limited to address the estimated increase or decrease in any revenues or costs to the state or local governments.” Advisory Opinion to the Attorney General re Refer-enda Required for Adoption & Amendment of Local Government Comprehensive Land Use Plans, 963 So.2d 210, 214 (Fla.2007) {Land Use Plans 2007). The financial impact statement in this case is exactly seventy-five words. Thus, the issues for the Court are whether the statement is clear and unambiguous and whether it is limited to addressing the estimated increase or decrease in revenues or costs.
The text of the Smarter Growth amendment states that its purpose or intended effect is to “provide a limited opportunity for voters to approve or disapprove these plans or amendments” and to “limit such referenda to situations where a sufficient number of persons file a petition seeking such a referendum during a set period of time.” The financial effect of the Smarter Growth amendment is difficult to quantify because to a large degree the increase or decrease in costs due to the proposed amendment will depend on how frequently counties and cities create new growth management plans or amend existing ones and on how frequently voters in the affected areas decide to avail themselves of the petition process that would be created by the amendment.
As directed by this Court in Land Use Plans 2007, the FIEC acknowledged in this financial impact statement that the ultimate cost of this proposed amendment is dependent on voter action, stating “[a]d-ditional costs will be incurred for petition notification and signature collection, as well as ballot preparation and associated expenses for conducting any required referendum.” The FIEC also delineated the noncontingent cost of establishing and administering the initiative process, stating that “[l]ocal governments will incur significant costs to establish and administer the new Florida Growth Management Initiative petition process.” Overall, the financial impact statement is necessarily indefinite but not unclear or ambiguous.
*125 III. CONCLUSION
For the reasons set forth above, we conclude that the proposed amendment complies with the single-subject requirement of article XI, section 3 of the Florida Constitution, that the ballot title and summary comply with section 101.161(1), Florida Statutes (2008), and that the financial impact statement complies with section 100.371, Florida Statutes (2008). This opinion should not be construed as favoring or opposing the passage of the proposed amendment.
It is so ordered.
CANADY and POLSTON, JJ., concur.
ANSTEAD, J., concurs in result only.
PARIENTE, J., dissents with an opinion, in which QUINCE, C.J., and LEWIS, J., concur.
LEWIS, J., dissents with an opinion, in which PARIENTE, J., concurs.

. Hometown Democracy's remaining challenges to the ballot title and summary, specifically its arguments concerning the use of the terms "citizens” and "Floridians” in the title; the use of term "changes” throughout the title and summary; the failure to disclose that some local governments have provided voters with some rights to vote on changes to local land use plans; and the lack of specificity concerning what local government plans would be impacted by the proposed amendment are without merit and do not warrant detailed discussion.