POLSTON, C.J.,
dissenting.
I respectfully dissent because placing this initiative’s title and summary on the ballot will result in Floridians voting on a constitutional amendment in disguise. The majority fails to acknowledge that the normal and common sense meaning of the words used in this initiative’s ballot summary and title are significantly different than the normal and common sense meaning of the words used in the amendment’s text. The majority also fails to follow its own prior amendment cases.
Given the plain meaning of the words used, the ballot summary and title mislead voters and do not disclose the true purpose and effect of the amendment’s text. See Advisory Op. to the Att’y Gen. re Fairness Initiative Requiring Leg. Determination That Sales Tax Exemptions and Exclusions Serve a Pub. Purpose, 880 So.2d 630, 635-36 (Fla.2004) (detailing this Court’s review of the validity of a ballot title and summary under section 101.161(1), Florida Statutes). The summary and title “hide the ball” and allow this initiative to “fly under false colors” regarding the severity of medical issues that qualify for marijuana use, a type of deception this Court has previously disallowed and assailed against. See, e.g., Fla. Dep’t of State v. Slough, 992 So.2d 142 (Fla.2008). Although this Court will not review the substantive merits of this initiative proposal, voters are entitled to know if they are being asked to open Florida to the expansive use of medical marijuana.
Specifically, the ballot title and summary are affirmatively misleading in four respects: (1) they fail to accurately inform voters that generic “conditions” (not “diseases”) qualify for the use of medical marijuana under the amendment’s text; (2) they fail to disclose that a person can obtain marijuana under the amendment’s text if a doctor simply thinks the benefits of marijuana would likely outweigh the risks; (3) they fail to disclose that the amendment grants broad immunity to physicians, among others; and (4) they falsely imply that the use and possession of marijuana in accordance with this amendment is permissible under federal law. Accordingly, I would disapprove this initiative for placement on the ballot.
1. “Condition” versus “Disease ”
The ballot summary informs Florida’s voters that this amendment “[aJIIows the medical use of marijuana for individuals with debilitating diseases as determined by a licensed Florida physician.” However, the amendment’s text does not actually provide that a physician must determine that an individual suffers from a “disease.” Instead, under the amendment’s text, an *811 individual only has to have a “condition” in order to qualify for medical marijuana.
The majority faults my discussion of the differences in plain meaning between the term “condition” in the amendment’s text and the term “disease” in the ballot summary for not including an in-depth discussion of the word “debilitating.” See majority op. at 800-01. This entirely misses the point! As explained in the next section of my dissent, the “debilitating medical condition” language that appears in the amendment’s text is specifically defined by that text to include medical issues that could hardly be considered “debilitating” or “enfeebling.” Infra at 814. In this section, I focus upon the affirmatively misleading choice of employing the word “disease” in the ballot summary when the word “condition” is what actually is to be given effect in the amendment’s text. Moreover, the word “debilitating” is used to modify “disease” in the ballot summary as well as “condition” in the amendment’s text. And because “debilitating” modifies both, it could not possibly eradicate any differences in plain meaning between the word “disease” and the word “condition.”
It is plainly obvious that the word “condition” is much broader in meaning and much less negative in connotation than the word “disease.” For example, the term “condition” can mean “states of health considered normal or healthy but nevertheless posing implications for the provision of health care (e.g., pregnancy).” Phil Sefton, Condition, Disease, Disorder, AMA Style Insider (Nov. 21, 2011), available at http://blog.amamanualofstyle.com/?s= condition+disease + disorder. “Condition” can also refer to “grades of health,” such as “stable, serious, or critical condition.” Id. And, if you look in a medical dictionary, you will discover that the medical profession defines “condition” to mean “to train; to subject to conditioning.” Dorland’s II-lustrated Medical Dictionary 407 (31st ed. 2007); see also Stedman’s Medical Dictionary 426 (28th ed. 2006) (defining “condition” to mean “[t]o train; to undergo conditioning,” “[a] certain response elicited by a specifiable stimulus or emitted in the presence of certain stimuli with reward of the response during prior occurrence,” or “Referring to several classes of learning in the behavioristic branch of psychology.”).
Medical dictionaries do not include a definition of illness, injury, or abnormal state of health for the term “condition.” However, the fourth entry for the word in Merriam-Webster’s Collegiate Dictionary indicates that “condition” may denote “a usu. defective state of health.” Merriam-Webster’s Collegiate Dictionary 240 (10th ed. 1994). Similarly, the Oxford English Dictionary includes “[a] state of health, esp. one which is poor or abnormal; a malady or sickness” as a definition for the word “condition.” The Oxford English Dictionary 684 (2d ed. 1989).
In contrast, the term “disease” has a narrower meaning and much more negative connotation. For example, according to Webster’s New World College Dictionary, a “disease” is “a particular destructive process in an organ or organism, with a specific cause and characteristic symptoms.” Webster’s New World College Dictionary 411 (4th ed. 1999). “Disease” is also defined as “a condition of the living animal or plant body or of one of its parts that impairs normal functioning and is typically manifested by distinguishing signs and symptoms” Merriam-Webster’s Collegiate Dictionary 358 (11th ed. 2005). And those affiliated with the medical profession have explained that “disease is perhaps most often used when referring to a condition that possesses specific characteristics.” Condition, Disease, Disorder, AMA Style Insider, supra. Specifically, Sted- *812 man’s Medical Dictionary explains that a “disease” is “[a] morbid entity ordinarily characterized by two or more of the following criteria: recognized etiologic agent(s), identifiable group of signs and symptoms, or consistent anatomic alterations.” Stedman’s Medical Dictionary 550 (28th ed. 2006); see also Dorland’s Illustrated Medical Dictionary 535 (31st ed. 2007) (defining “disease” to mean “any deviation from or interruption of the normal structure or function of a part, organ, or system of the body as manifested by characteristic symptoms and signs”).
Accordingly, Justice Labarga is correct in surmising that, while every “disease” is by definition a “condition,” every “condition” is not a “disease.” See dissenting op. at 825 (Labarga, J.). “Diseases” are only a subset of what is included in the broader and more value-neutral term “condition.” And by employing “disease” in the ballot summary, rather than the term “condition” that actually appears in the amendment’s text, the summary is affirmatively misleading. Contrary to the commonly understood meaning of the words in the summary, an individual could qualify for the use of marijuana under the amendment’s text if that individual suffers from a sore back as a result of playing sports or anxiety about an upcoming exam even though that abnormal soreness or anxiety (i.e., “condition”) does not rise to the level of a “disease.”
The manner in which the summary in this case misleads voters is certainly more egregious than other initiatives that this Court has stricken in the past, including the casino initiative petition that this Court disapproved in Advisory Opinion to the Attorney General re Casino Authorization, Taxation and Regulation, 656 So.2d 466 (Fla.1995). There, the ballot summary explained that local governments could authorize casinos at “hotels,” but the amendment’s text would have allowed local governments to authorize casinos at “transient lodging establishments.” Id. at 468. This Court concluded that the difference in language was misleading, explaining that “[w]e believe that the public perceives the term ‘hotel’ to have a much narrower meaning than the term ‘transient lodging establishment.’ ” Id. at 469. “Thus, while the summary leads the voters to believe that casinos will be operated only in ‘hotels,’ the proposed amendment actually permits voters to authorize casinos in any number of facilities, including a bed and breakfast inn.” Id.; see also Fla. Dep’t of State v. Mangat, 43 So.3d 642, 648 (Fla.2010) (invalidating legislatively proposed amendment due to misleading ballot summary and explaining that while the ballot summary’s “statement about ‘mandates that don’t work’ might arguably have a relationship to the amendment which is intended to prevent mandated participation in any health care system, neither the amendment nor the summary identifies what mandates are at issue, explains how the mandates do not work, or specifies for whom they do not work”).
Not only does the majority of this Court deny that there are commonly understood differences in meaning between “condition” and “disease,” it also suggests that, even if there were differences, those differences would not matter because they would pose no legal significance. See majority op. at 805-06. However, the majority is mistaken. Numerous courts have acknowledged the differences in meaning between the terms “condition” and “disease,” and those differences have determined the outcomes of cases, particularly in the insurance context. See, e.g., Katskee v. Blue Cross/Blue Shield of Neb., 245 Neb. 808, 515 N.W.2d 645, 651-53 (1994) (recognizing that not every medical condition is harmful enough to be considered a disease under the plain and ordinary *813 meaning of the term “disease,” and explaining that “if the condition is abnormal when tested by a standard of perfection, but so remote in its potential mischief that common speech would not label it a disease or infirmity, such a condition is at most a predisposing tendency”); Leslie v. J.C. Penney Life Ins. Co., 138 Idaho 305, 62 P.3d 1101, 1104 (2003) (“[A] condition which is found to be abnormal only when tested by a standard of perfection and with only a remote potential to be a source of physical disturbance is not a ‘disease!.]’ ”); Silverstein v. Metro. Life Ins. Co., 254 N.Y. 81, 171 N.E. 914 (1930) (same); see also Leland v. Order of United Commercial Travelers of Am., 233 Mass. 558, 124 N.E. 517, 520 (1919) (“[T]here is no active disease, but merely a frail general condition!.]”). In fact, these legally recognized differences in the plain meaning of “condition” and “disease” are more relevant to our analysis of whether this ballot summary is affirmatively misleading to voters than were the legal differences between “people” and “persons” at issue in Advisory Opinion to the Attorney General re Amendment to Bar Government from Treating People Differently Based on Race in Public Education, 778 So.2d 888, 897 (Fla.2000) (invalidating proposed amendment due to misleading ballot summary and explaining that “[w]hile ‘people’ and ‘person[s]’ also appear synonymous, their legal differences are significant and are not revealed to the voter”).
In addition, contrary to the majority’s suggestion otherwise,[1] the misleading use of the word “disease” in the ballot summary is not cured by reading the summary along with the title. The sponsor chose the title “Use of Marijuana for Certain Medical Conditions,” and, as explained above, the summary states that the amendment “[a]llows the medical use of marijuana for individuals with debilitating diseases as determined by a licensed Florida physician.” Read together, these phrases would reasonably lead voters to believe that only those certain medical conditions that are determined by a physician to be debilitating diseases would qualify for the use of medical marijuana if the amendment passed. This Court’s decision in Slough is directly on point in this regard.
In Slough, 992 So.2d at 148-49, this Court held that a ballot title and summary were misleading because, when read together, they distinctly implied that the proposed amendment would only apply to school property taxes when in fact it would have applied to other property taxes as well. This Court emphasized in Slough, that “the ballot title and summary may not be read in isolation, but must be read together in determining whether the ballot information properly informs the voters.” Id. at 148 (quoting Advisory Op. to Att’y Gen. re Florida’s Amend. to Reduce Class Size, 816 So.2d 580, 585 (Fla.2002)). This Court concluded that “[although the summary does state that proposed Amendment 5 ‘[l]imit[s] annual increases in assessment of non-homestead real property,’ ... [t]he specific reference to school property taxes in the title would reasonably lead voters to believe that the maximum increases in ‘assessment of non-homestead real property’ referenced in the summary are limited to school property taxes.” Id. Therefore, because “the actual ballot title and summary, when read together, do not clearly and unambiguously disclose [the] significant and distinct effect of proposed Amendment 5” on non-school assessments, “voters would likely be misled or confused with regard to the actual impact of Amendment 5.” Id. at 149.
*814 Similarly, in this case, the inclusion of “certain medical conditions” in the title does not erase the summary’s reference to “diseases.” When read together, the title and summary are still misleading because they do not clearly and unambiguously disclose to voters that those with “conditions” would qualify for medical marijuana under the amendment’s text, not just those with medical issues that rise to the level of “diseases.”

2. Benefits Would Likely Outweigh Risks

In addition to deceptively employing the term “disease,” the summary and title of this initiative also mislead voters by failing to inform them that all that is required under the amendment’s text to qualify for the use of marijuana is for one physician to think that the potential benefits of the drug would likely outweigh the potential risks.
As explained above, the title references “certain medical conditions” and the summary mentions that the amendment would allow access to marijuana for the relief of “debilitating diseases.” And while the definition in the amendment’s text of what qualifies for medical marijuana as a “Debilitating Medical Condition” includes a specific list of diseases that are clearly “debilitating” (such as cancer, AIDS, and ALS), it also includes the catchall category of “other conditions for which a physician believes that the medical use of marijuana would likely outweigh the potential health risks for a patient.” This catchall category certainly encompasses various medical issues that are less severe and less enfeebling than the “debilitating diseases” described in the title and summary. For example, despite what the title and summary convey to voters, minor aches and pains, stress, insomnia, or fear of an upcoming flight could qualify for the medical use of marijuana under the text of the amendment. This is seriously misleading.
The manner in which the title and summary mislead voters regarding the scope of medical issues that qualify for marijuana is analogous to the casino initiative petition that this Court disapproved in Advisory Opinion to the Attorney General re Casino Authorization, Taxation and Regulation, 656 So.2d 466. The summary in the casino initiative case stated that local governments could authorize casinos “on riverboats, commercial vessels, [and] at hotels.” Id. at 467. However, as this Court explained, the text of the amendment would allow casinos on stationary vessels, including “a casino in a building constructed to look like a riverboat even though the structure is completely landlocked.” Id. at 469. Consequently, this Court struck the casino proposal, concluding that “the summary of the proposed amendment [did] not accurately describe the scope of the text.” Id.
Furthermore, the title and summary in this case are an example of “wordsmith-ing,” a practice that this Court expressly prohibited in Slough, 992 So.2d at 149:
In recent years, advantageous but misleading “wordsmithing” has been employed in the crafting of ballot titles and summaries. Sponsors attempt to use phrases and wording techniques in an attempt to persuade voters to vote in favor of the proposal. When such wording selections render a ballot title and summary deceptive or misleading to voters, the law requires that such proposal be removed from the ballot — regardless of the substantive merit of the proposed changes.
The sponsor here deceptively uses the terms “debilitating diseases” and “certain medical conditions” in the title and summary in an attempt to gain electoral advantage with voters who might object to a *815 broader use of medical marijuana. However, the amendment’s text authorizes the medical use of marijuana for more “conditions” and “diseases” than one commonly thinks of as “debilitating.” If the sponsor had wished to accurately convey the effect of the amendment’s text in an informative and straightforward manner, the sponsor could have titled its amendment “Use of Marijuana for Various Medical Conditions” and employed terminology in the summary similar to “allows medical use of marijuana when licensed physician finds patient benefits would likely outweigh risks.” See Slough, 992 So.2d at 149 (“If a sponsor ... wishes to guard a proposed amendment from [being stricken due to deceptive wordsmithing] it need only draft a ballot title and summary that is straightforward, direct, accurate and does not fail to disclose significant effects of the amendment merely because they may not be perceived by some voters as advantageous.”); see also Advisory Op. to Att’y Gen. re Ltd. Political Terms in Certain Elective Offices, 592 So.2d 225, 228 (Fla.1991) (“A ballot summary may be defective if it omits material facts necessary to make the summary not misleading.”).
The majority ignores this deceptive wordsmithing and the expansive use of medical marijuana that would result under the plain meaning of the amendment’s text. Instead, the majority warps the ordinary and common sense meaning of the amendment’s text through the inappropriate use of statutory construction tools. They do so even though the principle of ejusdem generis that they employ is inappropriate in this case because the meaning of this amendment’s text (including its catchall category) is clear and unambiguous. See City of Panama City v. State, 60 So.2d 658, 660 (Fla.1952); see also Pottsburg Util. Inc. v. Daugharty, 309 So.2d 199, 201 (Fla. 1st DCA 1975) (“[Ejusdem generis] is applicable, however, only where there is some inconsistency or ambiguity in the contract and the meaning of the general provision is doubtful and requires clarification. (17A C.J.S. Contracts § 313) Where both the general and special provisions may be given reasonable effect in the context of the contract both provisions must be retained and given whatever meaning the words employed convey.”). “Ejusdem generis should only come into play when it is necessary to construe an ambiguous statute, not to create an ambiguity in a clearly worded statute.” State v. Hobbs, 974 So.2d 1119, 1121 (Fla. 5th DCA 2008).
Specifically, the definition of “Debilitating Medical Condition” that appears in subsection (b)(1) of the amendment’s text reads in its entirety as follows:
“Debilitating Medical Condition” means cancer, glaucoma, positive status for human immunodeficiency virus (HIV), acquired immune deficiency syndrome (AIDS), hepatitis C, amyotrophic lateral sclerosis (ALS), Crohn’s disease, Parkinson’s disease, multiple sclerosis or other conditions for which a physician believes that the medical use of marijuana would likely outweigh the potential health risks for a patient.
Instead of concluding that this definition includes a list of specific diseases followed by a catchall category of “other conditions for which a physician believes that the medical use of marijuana would likely outweigh the potential health risks for a patient” as its text plainly and expressly says, the majority rewrites the definition. Inappropriately using the principle of ejus-dem generis, the majority in effect inserts the word “similar” into the clear and unambiguous definition, thereby transforming the catchall category into something else entirely. After the majority’s rewrite, subsection (b)(1) now states “or other similar conditions for which a physician be *816 lieves that the medical use of marijuana would likely outweigh the potential health risks for a patient.” The majority’s revision is entirely inappropriate under our precedent. See generally Mangat, 43 So.3d at 650 (“This Court does not have the authority to substitute the language that three-fifths of the members of the Legislature have voted to place on the ballot.”). To be clear, I do not disagree with the canon of ejusdem generis itself as the majority incorrectly asserts. See majority op. at 802. Rather, I disagree with the majority’s decision to apply the canon in this particular case because the meaning of the amendment’s text (including its catchall category) is very clear and unambiguous.
Additionally, while the majority correctly mentions that the amendment’s subsections must be read together as a whole, it fails to do so. The majority points to subsection (b)(9), which defines “Physician certification” to mean “a written document signed by a physician, stating that in the physician’s professional opinion, the patient suffers from a debilitating medical condition, that the potential benefits of the medical use of marijuana would likely outweigh the health risks for the patient, and for how long the physician recommends the medical use of marijuana.” And the majority insists that based upon subsection (b)(9) a physician must not only conclude that the potential benefits outweigh the risks, but that the patient also has a “debilitating medical condition.” See majority op. at 802-03. However, the majority ignores that “debilitating medical condition” is a specifically defined term under the amendment’s text. In fact, as just mentioned above, subsection (b)(1) has already defined “Debilitating Medical Condition” to mean “other conditions for which a physician believes that the medical use of marijuana would likely outweigh the potential health risks for a patient.” Therefore, by reading subsections (b)(1) and (b)(9) together, it is abundantly (and redundantly) clear that a physician need only believe that the potential benefits of marijuana would likely outweigh the risks for the individual. There is no additional “debilitating” medical condition or “debilitating” disease that must be present to qualify for marijuana.
The majority claims that this interpretation renders “meaningless the first part of subsection (b)(9), which states that the physician must determine that ‘the patient suffers from a debilitating medical condition.’ ” Majority op. at 803. To the contrary, it is the majority’s interpretation that renders meaningless an entire subsection of the amendment’s text, specifically subsection (b)(1) which actually defines what the amendment’s text means when it states “debilitating medical condition” in the first part of subsection (b)(9) and everywhere else. Why include a specific definition of a term that is used repeatedly in the amendment’s text if the sponsor of the amendment did not intend for that term to mean what the definition says it means?
The majority also mentions other parts of the amendment’s text that it claims are “restrictions [that] reflect a constitutional scheme that is meant to be limited in scope regarding the medical use of marijuana.” Majority op. at 803. In particular, the majority notes subsection (b)(9)’s explanation that “[a] physician certification may only be provided after the physician has conducted a physical examination of the patient and a full assessment of the patient’s medical history.” But an exam and a medical history are hardly “restrictions” limiting the ability of a physician to recommend marijuana for medical issues that are not commonly viewed as severe or debilitating. In fact, these requirements are in place every time someone receives an antibiotics prescription for a mild, non- *817 debilitating infection. Accordingly, contrary to the majority’s suggestion otherwise, the title and summary mislead voters regarding the scope of medical issues that qualify for medical marijuana under the plain meaning of the amendment’s text.

3. Immunity

Additionally, the title and summary of this initiative proposal mislead voters by failing to disclose the broad immunity that would be granted if this amendment is adopted, immunity that conflicts with and restricts Floridians’ current constitutional right of access to courts. Cf. Advisory Op. to the Att’y Gen. re Fla. Growth Mgmt. Initiative Giving Citizens the Right to Decide Local Growth Mgmt. Plan Changes, 2 So.3d 118, 123 (Fla.2008) (“Because the Smarter Growth amendment will not conflict with or restrict any existing rights to subject local growth management plans to local referenda, the lack of detail concerning the petition process does not render the title and summary misleading.”).
While the title and summary omit any mention of immunity from civil liability, criminal liability, and sanctions under Florida law, the first section of the amendment’s text reads as follows:
(a) PUBLIC POLICY.
(1) The medical use of marijuana by a qualifying patient or personal caregiver is not subject to criminal or civil liability or sanctions under Florida law except as provided in this section.
(2) A physician licensed in Florida shall not be subject to criminal or civil liability or sanctions under Florida law for issuing a physician certification to a person diagnosed with a debilitating medical condition in a manner consistent with this section.
(3) Actions and conduct by a medical marijuana treatment center registered with the Department, or its employees, as permitted by this section and in compliance with Department regulations, shall not be subject to criminal or civil liability or sanctions under Florida law except as provided in this section.
Based on the plain meaning of this text, physicians, caregivers, patients, marijuana treatment centers, and treatment center employees will be granted broad immunity relating to their participation in the medical use of marijuana if this amendment passes.
The majority completely ignores the broad immunity that subsection (a) provides to caregivers, patients, treatment centers, and treatment center employees. And while the majority acknowledges that subsection (a) discusses immunity for physicians, it completely misconstrues the plain language of the text to the point of making it meaningless.
Specifically, the majority claims that “it is a reasonable construction that physicians are granted immunity only to the extent that they prescribe marijuana ‘consistent with this section.’ ” Majority op. at 807. Thus, the majority concludes that “the proposed amendment does not protect physicians who fraudulently or negligently prescribe medical marijuana, does not change the professional duties and obligations of licensed Florida physicians, and does not restrict Florida’s current constitutional right of access to the courts.” Id. However, the majority fails to acknowledge that a physician could recommend marijuana for a patient “in a manner consistent with this section” but that recommendation could still be a form of medical malpractice. For example, a physician, in his misguided “professional opinion,” could believe that the benefits of marijuana for a teething toddler would likely outweigh the risks and, therefore, recommend that the toddler use marijuana three times a day for six months or until the teething subsid *818 ed. Indeed, this physician could have reached this determination and recommendation after conducting a “physical examination” of the toddler and after “a full assessment of the patient’s medical history,” which would mean the recommendation would be made “in a manner consistent with this section.” Of course, such a recommendation may fall outside “the prevailing professional standard of care for that health care provider.” § 766.102(1), Fla. Stat. (2013). And the victims of this medical malpractice would have no legal recourse due to the civil immunity provided to physicians by subsection (a) of the amendment’s text. The text of the amendment fails to include a requirement of adhering to the prevailing professional standard of care and instead provides immunity for whatever “professional opinion” the physician exercises, even if it is a negligent one.
Because any mention of immunity is omitted from the ballot title and summary, voters would be unaware that their valuable right to pursue medical malpractice claims (as well as other tort claims) associated with medical marijuana will be lost if this amendment passes. And, to be clear, this valuable right is currently guaranteed by article I, section 21 of Florida’s Constitution, which provides that “[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.”
This Court has invalidated prior proposed amendments based upon less significant omissions in ballot language with respect to the amendment’s effect on other constitutional provisions than the one at issue here. See, e.g., Advisory Op. to the Att’y Gen. re 1.35% Prop. Tax Cap, Unless Voter Approved, 2 So.3d 968, 976 (Fla.2009) (“[W]e find the ballot summary misleading because it does not inform the voter of the repeal of an existing Florida constitutional provision [providing] for the millages that can be assessed by the various local government units[.]”); Fla. Dep’t of State v. Fla. State Conference of NAACP Branches, 43 So.3d 662, 668 (Fla.2010) (invalidating an amendment proposed by the Legislature and explaining that “the ballot language did not inform the voters that the amendment would allow the existing mandatory constitutional requirement in article III, section 16(a), requiring that districts be contiguous to be subordinated to the discretionary standards” for redistricting outlined in the proposed amendment).
Accordingly, based upon our precedent, this initiative’s ballot language is fatally misleading because it fails to disclose the amendment’s significant effect on Floridians’ constitutional right of access to courts, including the right to pursue medical malpractice claims against physicians who negligently recommend marijuana in a manner consistent with the amendment’s text. See also Bar Gov’t from Treating People Differently Based on Race in Pub. Educ., 778 So.2d at 895 (“[C]ourts will be closed, not open, to victims of discrimination who seek redress for their injuries. Thus, the proposed amendments have a substantial effect on article I, section 21, and the failure to identify this substantial effect violates the single-subject requirement.”).

4. Federal Law

Finally, the summary misleads Florida’s voters by falsely implying that the use and possession of marijuana in accordance with this amendment would be lawful, including under federal law.
The summary states the following: “Applies only to Florida law. Does not authorize violations of federal law or any non-medical use, possession or production of marijuana.” When read together with the entire ballot summary and title, these *819 statements imply that qualifying patients may lawfully use and possess marijuana if the amendment passes. However, this is absolutely false. Whether or not this amendment passes, the medical use of marijuana will remain a federal crime.
In fact, any manufacture, distribution, or possession of marijuana is a criminal offense under federal law. See Gonzales v. Raich, 545 U.S. 1, 14, 125 S.Ct. 2195, 162 L.Ed.2d 1 (2005). The federal Controlled Substances Act (CSA) “designates marijuana as contraband for any purpose; in fact, by characterizing marijuana as a Schedule I drug, Congress expressly found that the drug has no acceptable medical uses.” Id. at 27, 125 S.Ct. 2195. Moreover, in 2005, the United States Supreme Court expressly held that Congress has the power to prohibit the local, intrastate cultivation and use of marijuana under the CSA even though such cultivation and use complied with a state’s medical marijuana law. Id. at 29, 125 S.Ct. 2195.
Therefore, despite what the summary falsely implies to voters, Floridians can still be prosecuted for the medical use of marijuana even if such use is in accordance with this amendment. See City of Riverside v. Inland Empire Patients Health and Wellness Ctr., Inc., 56 Cal.4th 729, 156 Cal.Rptr.3d 409, 300 P.3d 494, 497 (2013) (explaining that California’s medical marijuana laws “have no effect on the federal enforceability of the CSA in California. The CSA’s prohibitions on the possession, distribution, or manufacture of marijuana remain fully enforceable in this jurisdiction.”); United States v. Stacy, 734 F.Supp.2d 1074, 1084 (S.D.Cal.2010) (explaining that defendant’s compliance with California’s medical marijuana laws did not grant him immunity under federal law and that, in his federal prosecution, defendant could not present the defense that he was cultivating marijuana in compliance with state law and that he had a good faith belief it was lawful). And while ballot summaries are not required to mention the current state of federal law or a proposed state constitutional amendment’s effect on federal law, they are required to not affirmatively mislead Florida voters by falsely implying the opposite of what that current state of federal law is.

5. Conclusion

To summarize, the title and summary at issue in this case are affirmatively misleading because they obscure the breadth of medical issues that would qualify for medical marijuana by deceptively employing the term “disease” and by failing to disclose that a physician need only believe that the benefits would likely outweigh the risks. Additionally, the title and summary are affirmatively misleading because they fail to disclose the broad immunity that would be granted if the amendment passes and because they falsely imply that the use and possession of marijuana in accordance with the amendment would not violate federal law. As a result, the ballot title and summary omit significant details that would enable a voter to make an informed decision regarding the merits of the amendment.
Therefore, I would disapprove the proposal for placement on the ballot, and I respectfully dissent.
CANADY, J., concurs.

. See majority op. at 805.